UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

In the Matter of:

DUSTIN JADE WELLS,

    Debtor,

_____

KATHLEEN McCALLISTER,

    Plaintiff,

      v.

DUSTIN JADE WELLS,

    Defendant.

_____

Case No. 4:20-cv-00086-BLW

**MEMORANDUM DECISION AND ORDER**

## INTRODUCTION

This appeal deals with a so-called "vanishing homestead exemption"[1] in the context of a Chapter 13 bankruptcy.

In 2019, Debtor Dustin Jade Wells declared bankruptcy and claimed his home as exempt under Idaho statutory law. Later, during the pendency of his bankruptcy, Wells sold the home with no intent of reinvesting the proceeds in a

---

[1] *See generally In re Williams*, 515 B.R. 395, 401 (Bankr. D. Mass. 2014) (characterizing state homestead exemption statutes as providing for vanishing exemptions; discussing cases).

new home. He used the proceeds to pay a creditor.

Idaho's homestead exemption statute allows debtors to exempt proceeds from a voluntary sale of the homestead for a one-year period but only if the sale was made "in good faith for the purpose of acquiring a new homestead . . . ." Idaho Code § 55-1008(1). Here, the bankruptcy court held that the proceeds from the sale of Wells' homestead were exempt under the Idaho statute. The trustee appeals, arguing that the homestead exemption vanished by operation of law when Wells sold the homestead without reinvesting the proceeds in another home and with no intent to do so. The Court agrees and will reverse.

## STANDARD OF REVIEW

The Court will apply a de novo standard of review because the appeal involves interpreting the Bankruptcy Code and Idaho's homestead statute. *See generally Smith v. IRS (In re Smith),* 828 F.3d 1094, 1096 (9th Cir. 2016) ("The court reviews de novo the bankruptcy court's interpretation of the bankruptcy code."); *United States v. Cabaccang*, 332 F.3d 622, 624-25 (9th Cir. 2003) (en banc) ("The construction or interpretation of a statute is a question of law that we review de novo.").

## BACKGROUND

Debtor Dustin Jade Wells filed a chapter 13 bankruptcy petition in May 2019. He valued his home at $625,000 and claimed $100,000 of the equity as

exempt under Idaho's homestead exemption.

The trustee objected, arguing that the relevant Idaho statute limited the debtor to the lesser of $100,000 or the net value of the homestead exemption. In this case, the net value was $57,677.64, given that the home was subject to two mortgage liens totaling $567,322.36 ($625,000 − $567,322.36 = $57,677.64). Wells responded by amending his schedules, increasing the stated value of the residence to $668,000 and then stating the homestead exemption as "100% of the fair market value, up to any applicable statutory limit." The trustee did not object to this amended homestead exemption.

Later, as part of a settlement agreement with his largest creditor, Box Canyon Dairy, Wells agreed to sell the home and pay Box Canyon $45,000 at closing. The trustee objected to Wells' motion to sell the home to the extent it would allow him to use proceeds from the sale to pay Box Canyon directly. The trustee relied on Idaho statutory law which states that if a homestead is voluntarily liquidated, the exempt proceeds must be reinvested in another homestead within a year; otherwise, the proceeds lose their exempt status. *See* Idaho Code § 55-1008.

In January 2020, the bankruptcy court overruled the trustee's objection and entered an order permitting the sale and the payment of proceeds directly to Box Canyon. The trustee appeals.

## DISCUSSION

### 1.  Mootness

Preliminarily, Wells argues that this appeal is moot. He points out that a plan has already been confirmed, all estate property has vested in the him, he has received funds from the homestead sale, and he has paid those funds to Box Canyon Dairy.

There are two mootness doctrines to consider: Article III mootness and equitable mootness. *See In re Thorpe Insulation Co.*, 677 F.3d 869, 880 (9th Cir. 2012). Article III mootness focuses on whether there is an actual case or controversy before the court. *See id.*; U.S. Const. art. III, § 2, cl. 1. Equitable mootness, on the other hand, "occurs when a 'comprehensive change of circumstances' has occurred so 'as to render it inequitable for this court to consider the merits of the appeal.'" *Thorpe*, 677 F.3d at 880. Wells focuses solely on equitable mootness, and he carries the burden of establishing mootness. *See generally Suter v. Goedert,* 504 F.3d 982, 986 (9th Cir. 2007) ("the burden of establishing mootness is on the party advocating its application").

The Ninth Circuit looks at the following factors to determine equitable mootness: "whether a stay was sought, whether the plan has been substantially consummated, whether third party rights have intervened, and, if so, whether any relief can be provided practically and equitably." *Thorpe*, 677 F.3d at 880.

Considering these factors, the Court is not persuaded that this appeal is equitably moot.

First, although the trustee did not seek a stay, she did ensure that the plan anticipated her appeal. The confirmed plan includes this provision:

> Discharge shall not be entered upon completion of plan payments unless Box Canyon Dairy shall have received a minimum of $55,000 on Claim No. 1 paid through the Trustee. The $55,000 is separate and apart from the proceeds of the sale of the home and gifts. *If Trustee should succeed in her appeal and should the proceeds from the sale of the home be accounted through the Plan and Trustee, or actually go through her office, it shall not count towards the $55,000.*

*Ch. 13 Plan*, Bk. Dkt. 209, Part 8, ¶¶ 1.4 & 5.3 (emphasis added). Granted, the better practice would have been to seek a stay. But given the trustee's objections below, along with this provision in the plan, the Court is not persuaded that the trustee sat on her rights or otherwise permitted developments to proceed without her participation. Likewise, the Court is not persuaded that the trustee sat on her rights by failing to object to the amended homestead exemption. At that time, there was no indication that Wells intended to sell the property at all so it would have been premature for the trustee to object. As discussed below, the Ninth Circuit rejected a similar argument in *England v. Golden (In re Golden)*, 789 F.2d 698 (9th Cir. 1986). *See* discussion *infra* ¶ 2.B.

Second, even assuming Wells' plan has been substantially consummated, the Court may still provide effective relief given the plan provision that anticipates

what will happen if the trustee succeeds on this appeal. *See Thorpe*, 677 F.3d at

882 n.7 (observing that even if a plan is substantially consummated, "that would

not be the end of the inquiry").

Third and fourth, Box Canyon, a third party, will be affected by this appeal.

But, again, this possibility was anticipated in the plan. Additionally, it is still

possible for the court to practically and equitably provide relief to the appellant. As

for the equities of the situation, the trustee correctly points out that Box Canyon

has received an inequitable distribution. Otherwise, the court is persuaded that, on

remand, the bankruptcy court will be able to craft a practical resolution to this

matter that is in keeping with the plan provision anticipating a potentially

successful appeal. Accordingly, the Court declines to find this appeal equitably

moot.

**2.     The Homestead Exemption**

**A.     The Statutory Framework**

The filing of a Chapter 13 bankruptcy petition creates a bankruptcy estate

generally consisting of all of the debtor's property. 11 U.S.C. § 541(a). The

Bankruptcy Code authorizes the debtor to exempt certain kinds of property from

the estate, which enables the debtor to retain those assets post-bankruptcy.

§ 522(b)(1) & (d). One such exemption is the homestead exemption, which

protects up to $25,150 in equity in the debtor's home. § 522(d)(1).[2] Some states, including Idaho, have opted out of the federal exemptions and instead provide their citizens with different, often more generous, protections than those afforded under the Bankruptcy Code. *See generally Law v. Siegel*, 571 U.S. 415, 418 (2014) (citing Victor D. López, *State Homestead Exemptions and Bankruptcy Law: Is It Time for Congress To Close the Loophole?* 7 Rutgers Bus. L.J. 143, 149-65 (2010) (listing state exemptions)

Idaho's homestead exemption statute, as it applies to Wells, protects up to $100,000 in home equity. *See* Idaho Code § 55-1008.[3] The statute further provides that if the homestead is sold "in good faith for the purpose of acquiring a new homestead," the exemption will cover the sale proceeds for up to one year as well as any new homestead purchased with the proceeds. *Id.* As already noted, Wells

---

[2] Section 522(d)(1) provides for a $15,000 exemption, but that number adjusts upward every three years beginning in April 1998. *See* 11 U.S.C. § 104.

[3] The relevant part of the statute provides:

> Except as provided in section 55-1005, Idaho Code, the homestead is exempt from attachment and from execution or forced sale for the debts of the owner up to the amount specified in section 55-1003, Idaho Code. *The proceeds of the voluntary sale of the homestead in good faith for the purpose of acquiring a new homestead . . . up to . . . [$175,000] shall likewise be exempt for one (1) year from receipt, and also such new homestead acquired with such proceeds.*

Idaho Code § 55-1008(1) (emphasis added). Note that the statute now protects up to $175,000 in equity. That limit, however, is applicable to debtors who filed bankruptcy on or after March 20, 2020. Wells filed before that date and is thus subject to the previous, $100,000 statutory limit.

did not reinvest the proceeds from the sale of his home into a new one, nor did he intend to do so.

### B.     Ninth Circuit Authority

The Ninth Circuit has held that if debtors exempt a homestead under a state statute, they must comply with the entire statute; they cannot choose favorable provisions and discard unfavorable ones. *See generally Golden,* 789 F.2d at 700-01. Put differently, "When a debtor elects to avail himself of the exemptions the state provides, he agrees to take the fat with the lean . . . ." *Zibman v. Tow (In re Zibman)*, 268 F.3d 298, 304 (5th Cir. 2001). This rule is illustrated in two Ninth Circuit cases that ultimately control this appeal: *England v. Golden (In re Golden)*, 789 F.2d 698 (9th Cir. 1986), and *Wolfe v. Jacobson (In re Jacobson)*, 676 F.3d 1193 (9th Cir. 2012).

In *In re Golden*, 789 F.2d 698, a chapter 7 debtor sold his house before declaring bankruptcy. *Id.* at 699. He claimed the proceeds from the sale were exempt under California's homestead exemption statute, which required proceeds to be reinvested within six months. *Id.* Golden did not reinvest the proceeds but nevertheless argued that proceeds were exempt. *Id.* at 700.

The Ninth Circuit disagreed: "Applying California law, we . . . hold that when the debtor fails to reinvest homestead proceeds within a period of six months in which the debtor has control of those proceeds, the proceeds should revert to the

trustee." *Id.* (citation omitted). The court rejected the debtor's argument that the trustee's silence during the six-month reinvestment period prevented the trustee from claiming the proceeds. The court explained that the trustee had no right to claim the proceeds during that period; thus there was no reason for the trustee to "notify the debtor of a claim not yet in existence." *Id.* at 701. Instead, the court effectively placed the burden on the debtor to act to maintain an exemption that might otherwise vanish given the statutory language. *Id.* at 701. "Given the clarity of the provisions requiring reinvestment, Golden could not have reasonably relied on the trustee's silence as an indication of a permanent exemption." *Id*.

Under *Golden*, the proceeds from the sale of Wells' home lost their exempt status because Wells did not sell his home for the purpose of purchasing a new home and did not, in fact, invest the proceeds in a new home within the statutory period. Granted, Wells' situation is distinguishable because Golden sold his house *before* filing bankruptcy (and thus had proceeds in hand – not a homestead – when he filed) and Wells sold his *after* filing (and thus had a homestead – not proceeds – when he filed). Given this difference, Wells could argue that the reinvestment requirement was not triggered for Wells because the *property* was being claimed as exempt – not *proceeds*. The bankruptcy court took note of this fact, observing that under the snapshot rule, it was significant that on the date Wells filed his petition, the homestead property "wasn't in the form of proceeds but rather was in the form

of land. The debtor hadn't sold it." *Oral Ruling Tr.*, Dkt. 4-2, at 32:22-25.

But the Ninth Circuit addressed this situation – that is, a post-petition sale of a homestead – in *In re Jacobson*, 676 F.3d 1193, and was not persuaded that this factual distinction required a different ruling than the one handed down in *Golden*. In *In re Jacobson,* chapter 7 debtors claimed a state homestead exemption and then later, post-petition, sold the home. *Id.* at 1198. The debtors did not reinvest the proceeds within the statutory period but nevertheless argued that the exemption should apply because, under the "snapshot rule," exemptions are fixed at the time the petition is filed. *See id.* at 1199; *see generally White v. Stump,* 266 U.S. 310, 313 (1924). The bankruptcy court agreed with the debtors, and the Ninth Circuit BAP affirmed.

The Ninth Circuit reversed, relying on its earlier decision in *Golden.* The court stated:

> There is no material difference between *Golden* and this case. The homestead exemption gave the Jacobsons clearly defined rights with respect to the . . . property. The Jacobsons had a right to $150,000 in proceeds. . . . *That right was contingent on their reinvesting the proceeds in a new homestead within six months of receipt. The Jacobsons did not abide by that condition and thus forfeited the exemption.*

*Id.* at 1199 (emphasis added; citations to the governing state homestead statute, Cal. Civ. P. Code §§ 704.730(a)(3) & 704.720(b), omitted).

Otherwise, the *Jacobson* Court was unpersuaded by the debtor's policy

arguments. Among other things, the Jacobsons had argued that honoring the statutory reinvestment requirement would incentivize trustees to delay closing cases during the reinvestment period. The Ninth Circuit found this concern "too speculative." *Id.* at 1200. And, more broadly, the court held that the Bankruptcy Code "demands respect for the ways in which states balance the rights of debtors and creditors." *Id.*

*Jacobson* is almost directly on point. The only notable difference is that Wells is a chapter 13 debtor whereas the Jacobsons filed a chapter 7 petition. But that distinction does not help Wells. Rather, it could potentially help the trustee because in chapter 13 cases, the Bankruptcy Code contains a provision mandating that all property coming into the debtor's possession after the commencement of the case, and before the case is closed, dismissed, or converted, becomes property of the estate. *See* 11 U.S.C. § 1306. Chapter 7 does not contain any similar provision, and other courts have held that chapter 7 debtors who own a homestead on the date of filing enjoy an unconditional state exemption, notwithstanding a reinvestment requirement for proceeds. *See Lowe v. DeBerry (In re DeBerry)*, 884 F.3d 526, 529-30 (5th Cir. 2018) (holding that if a chapter 7 debtor owned a homestead on the date of filing and later sold that homestead, the homestead was nonetheless subject to an unconditional state homestead exemption). These cases do not help Wells, though, given that he is a chapter 13 debtor. Accordingly, under

*Jacobson* and *Golden*, Wells is foreclosed from arguing that the proceeds from his

homestead sale were exempt.

### C.    Supreme Court Authority

Wells argues that *Golden* and *Jacobson* conflict with three Supreme Court

decisions: *Owen v. Owen*, 500 U.S. 305 (1991); *Taylor v. Freeland & Kronz*, 503

U.S. 638 (1992); and *Law v. Siegel*, 571 U.S. 415 (2014). The Court disagrees; two

of these cases were decided in the early 1990s – roughly 20 years before the 2012

*Jacobson* decision –  and none of these cases overrules either *Golden* or *Jacobson.*

Taking the cases in chronological order, the first stop is *Owen v. Owen*, 500

U.S. 306 (1991). In that case, Dwight Owen owned a condo subject to a $160,000

judgment lien held by his ex-wife. (His ex-wife had obtained the judgment before

he purchased the condo.) Mr. Owen filed a bankruptcy petition and declared the

condo exempt. By operation of state law, the condominium remained subject to his

ex-wife's lien. *Id.* at 307. The Supreme Court held that Mr. Owen could avoid the

lien because state law directly conflicted with the Bankruptcy Code (specifically

11 U.S.C. § 522(f)) which allows debtors to avoid preexisting liens. *Id.* at 308.

There is no such conflict here. At the time Wells declared bankruptcy he had

the right to – and did – claim a homestead exemption. But the state statute sets

forth conditions to maintain that exemption when there is a sale, and Wells did not

comply with those requirements and thus failed to maintain the exemption. There

is nothing about that Idaho's statutory reinvestment requirement that directly conflicts with the Bankruptcy Code. Further, in dicta, the *Owen* Court stated that nothing in the Bankruptcy Code "limits a State's power to restrict the scope of its exemptions; indeed, it could theoretically accord no exemptions at all." *Id.* Accordingly, this Court cannot disregard the reinvestment requirement in the Idaho statute. *Cf. Ford v. Konnoff (In re Konnoff)*, 356 B.R. 201, 208 (B.A.P. 9th Cir. 2006) (rejecting the notion that *Owen* effectively overruled *Golden*).

Next up is *Taylor v. Freeland & Kronz*, 503 U.S. 638 (1992). In that case, the debtor, Emily Davis, declared bankruptcy while she was pursuing an employment discrimination claim in state court. *Id.* at 640. She claimed the money she expected to win in the lawsuit as exempt. At the initial meeting of creditors, the trustee was informed that Davis might win $90,000 in her lawsuit. The trustee decided not to object; he doubted the lawsuit had any value. *Id.* That turned out to be a mistake; Davis settled her case for $110,000 and then turned over a portion of the settlement to her attorneys to cover their fees. The trustee demanded that the law firm turn over monies it had received from Davis. The firm refused, arguing that it should be able to keep the fees because Davis had claimed the proceeds as exempt, and the trustee had not timely objected. *Id.*

The Court agreed with the firm, holding that because there was no objection, the exemption became final. The Court explained that "[d]eadlines may lead to

unwelcome results, but they prompt parties to act and they produce finality. In this case, despite what respondents repeatedly told him, Taylor did not object to the claimed exemption." *Id.* at 644. The Court held that, having failed to object, the trustee could not later seek to deprive Davis and the law firm of the exemption. *Id.*

*Taylor* is inapplicable here. True, the trustee did not object to Wells' amended exemption, but that is irrelevant because the homestead exemption vanished when Wells did not reinvest the proceeds in another homestead. *Taylor* did not address a homestead exemption – or any exemption with a similar sunset provision – and is thus unhelpful.

The final Supreme Court case, *Law v. Siegel*, 571 U.S. 415 (2014), is also unhelpful. In that case, a chapter 7 debtor falsely claimed that an individual had a large mortgage on his home and then claimed his home as exempt under the state homestead exemption statute. At the time, the trustee didn't know of the fraud and therefore did not object to the claimed exemption. *Id.* at 419. Later, after extensive litigation, the trustee learned of the fraudulent mortgage and asked the bankruptcy court to surcharge the proceeds of the home sale to recoup some of his litigation expenses. The bankruptcy court allowed the surcharge. *Id.* at 419-20. The Supreme Court reversed, holding that because the trustee had not objected to the exemption, the exemption became final and the surcharge was unauthorized. *Id.* at 422-23.

Here, Wells is not arguing that the bankruptcy court allowed an improper

surcharge on exempt proceeds. Rather, the issue is whether a claimed homestead exemption can vanish by its own terms, even if the trustee does not object. *Law* did not address or rule on that issue, meaning that *Golden* and *Jacobson* remain good law and control the outcome. Further, to the extent *Law* spoke to the issue, it confirmed that state-court exemptions come with whatever strings may be attached: "It is of course true that when a debtor claims a state-created exemption, the exemption's scope is determined by state law, which may provide that certain types of debtor misconduct warrant denial of the exemption." *Id.* at 425 (citations omitted).

To be sure, *Golden* and *Jacobson* have been criticized. *Jacobson* has been criticized in at least one article;[4] the First Circuit has expressly stated that *Jacobson* is "unpersuasive,"[5] and two Ninth Circuit BAP Judges have questioned whether *Golden* was correctly decided in the first place.[6] But despite these criticisms, both cases remain good law; this Court is bound to follow them. Plus, although Judge

---

[4] Hon. Alan M. Ahart, *In re Jacobson: The Ninth Circuit Court of Appeal Erred by Holding the Debtor Liable for Her Exempt Homestead Sale Proceeds*, 32 Cal. Bankr. J. 409 (2013).

[5] *Rockwell v. Hull (In re Rockwell),* 968 F.3d 12, 23 (1st Cir. 2020).

[6] *See Gaughan v. Smith (In re Smith)*, 342 B.R. 801, 809 (B.A.P. 9th Cir. 2006) (Klein, J., concurring) ("The issue is difficult, and *Golden* may not have been correctly decided in 1986."); *In re Konnoff*, 356 B.R. at 208 (Pappas, J., concurring) (stating that *Golden* deserves reconsideration).

Klein criticized *Golden,* he noted that at least one of "perverse incentives" of the case – that trustees would prolong cases in an effort to have the exemption automatically vanish – had not manifested itself in the decades since *Golden* was decided. *See In re Smith,* 342 B.R. at 809 (Klein, J., concurring). As he put it, "the opportunity for abuse following *Golden* has remained more theoretical than real." *Id.*

For all these reasons, the Court concludes that Wells' homestead exemption vanished when he sold his home and did not reinvest proceeds in another home. Accordingly, the Court will reverse.

## ORDER

For all these reasons, the Court **REVERSES** the bankruptcy court's decision and **REMANDS** for proceedings consistent with this ruling.

DATED: October 14, 2020

B. Lynn Winmill
U.S. District Court Judge